(No. 24651.—

1242 LAKE SHORE DRIVE BUILDING CORPORATION, Appellant, *vs.* EDWARD J. HUGHES, Secretary of State, *et al.* Appellees.

*Opinion filed October 13, 1938.*

DEFREES, BUCKINGHAM, JONES & HOFFMAN, (ARTHUR O. GRAVES, of counsel,) for appellant.

OTTO KERNER, Attorney General, (JOSEPH A. LONDRI-GAN, and P. C. OTWELL, of counsel,) for appellees.

Mr. JUSTICE ORR delivered the opinion of the court:

The 1242 Lake Shore Drive Building Corporation brought an action in the circuit court of Sangamon county against the Secretary of State and State Treasurer to recover a portion of the annual franchise tax paid by it for the years 1934, 1935, 1936 and 1937. The circuit court entered a decree dismissing the complaint and plaintiff has appealed directly to this court.

On November 21, 1928, the 1242 Lake Shore Drive Syndicate was organized with power to acquire real estate, erect an apartment building and manage it, and the sum of $543,750 was paid in by subscribing members. In April, 1929, the syndicate managers organized the 1242 Lake Shore Drive Building Corporation with an authorized capital of 14,500 shares. Ten shares were sold to subscribers at $100 per share; the remaining shares were transferred to the syndicate in exchange for real estate which the syndicate had purchased for $172,000, cash, plus a purchase-money first mortgage of $125,000. On May 29, 1929, the corporation and the syndicate entered into a contract whereby the syndicate was to furnish funds to pay off the $125,000-mortgage on the real estate and, in addition, to erect a twenty-eight story coöperative apartment building. In return, the corporation agreed to turn over the $1000 received by it for the ten shares of stock sold for cash, and also to execute to the syndicate a ninety-nine-year lease of all the occupiable parts of the building. The lease, as executed, provided for an annual rental to be paid the corporation of $1 per year plus a "maintenance rent" to equal all expenses incurred by the corporation in operating the building and a "special rent" to cover assessments on the corporation's stock. The lease further provided that the syndicate might assign portions of the lease to purchasers of the corporate

stock held by the syndicate. The building was erected by the syndicate at a cost of $2,250,000 and was subject to a mortgage of $850,000. Eleven of the twenty-eight apartments have been transferred to tenants who acquired their interests by purchasing a stated number of the shares of the corporation, held by the syndicate, and receiving an assignment of a portion of the original lease from the corporation to the syndicate. When the plan is finally completed, all the occupiable parts of the building will have been subleased to tenants who will own, in amounts proportionate to the value of their apartments, all the stock of the corporation originally issued to the syndicate and who will be liable in the same proportion for the "maintenance" and "special" rents.

On May 4, 1929, the corporation reduced its capital stock to 14,000 shares having no par value but with a stated value on the corporate books of $173,000,—i. e., $1000, cash, plus $172,000—the value of the building site. In its annual report to the Secretary of State in 1930 and 1931, however, the corporation stated the consideration received by it for its shares to be $1,400,000,—i. e., the net value of the completed building—$2,250,000 less the $850,000-mortgage. On June 19, 1933, the corporation changed its capital stock from 14,000 shares of no par value to 14,000 shares of a stated value of $140,000.

The Business Corporation act provides that a corporation shall pay an annual franchise tax on the sum of its stated capital and paid-in surplus. (Ill. Rev. Stat. 1937, chap. 32, pars. 157.131, 157.132.) Stated capital is defined as the consideration received by the corporation for all shares of no par value stock issued except such part thereof as may have been allocated to paid-in surplus. (Ill. Rev. Stat. 1937, chap. 32, par. 157.2(k).) Paid-in surplus is defined as all that part of the consideration received by the corporation for or on account of all shares issued which does not constitute stated capital.

The sole question before us is whether the value of the completed building should be included as part of the consideration received by the corporation in exchange for its shares. We believe that it should be so included. The various conveyances and contracts executed by the corporation and the syndicate were integrated steps in a well-devised plan and must be considered together. Viewed realistically, that plan provided for the transfer of the building site and the completed structure to the corporation in exchange for substantially all of the corporation's capital stock and a ninety-nine-year lease on the building. While the actual transfer of the building did not occur until after the shares were issued to the syndicate, it is clear that the erection of the building and its ultimate transfer to the corporation were contemplated at the time the stock was issued. Defendants have cited numerous cases, including *Chicago, Milwaukee and St. Paul Railroad Co.* v. *Minneapolis C. & C. Ass'n.* 247 U. S. 490, and *Metropolitan Holding Co.* v. *Snyder,* 79 Fed. (2d) 263, holding that where the corporate form has been used to circumvent a statute, the corporate entity will be disregarded in the interests of justice. While these cases are not in point because here the corporate form is sought to be preserved, they are helpful in so far as they indicate that courts will view schemes of this nature with care in order to prevent evasion of statutory or constitutional duties imposed by the State.

Plaintiff further argues that even though the completed building be considered part of the consideration received for its shares, it is valueless because it is subject to a ninety-nine-year lease pursuant to which the corporation receives no net income. This argument is based, however, on the theory that the value of the building should be determined solely by capitalizing its net earnings. Plaintiff overlooks the fact that when the plan of disposing of these apartments is completed, substantially all of the stock will be owned by the lessees of apartments in the building who, by joint action,

can dispose of it at a figure approximating the original cost of the building, less depreciation. Under these circumstances, we believe that the valuation adopted by the Secretary of State was proper and that he correctly included it as part of paid-in surplus in computing plaintiff's annual franchise tax.

The decree of the circuit court of Sangamon county is affirmed.

*Decree affirmed.*