STANLEY HOPGOOD, Plaintiff-Appellee, *v.* ANHEUSER-BUSCH, INC., Defendant-Appellee—(St. Louis Refrigerator Car Company *et al.*, Defendants-Appellants).

Fifth District    No. 83—93

Opinion filed December 14, 1983.

HARRISON, J., dissenting.

Stephen M. Schoenbeck, of Schoenbeck, Tucker & Schoenbeck, of St. Louis, Missouri, for appellants.

John T. Papa, of Callis & Hartman, P.C., of Granite City, for appellee Stanley Hopgood.

JUSTICE JONES delivered the opinion of the court:

This interlocutory appeal is brought by the defendants, Manufacturers' Railway Company (hereinafter MRC) and St. Louis Refrigerator Car Company (hereinafter SLRC), pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308). The plaintiff, Stanley Hopgood, an employee of SLRC, was injured during the course of his employment with SLRC and brought suit against SLRC, MRC, and Anheuser-Busch, Inc. (hereinafter Busch), pursuant to the Federal Employers' Liability Act (45 U.S.C. sec. 51 *et seq.* (1976)) (hereinafter FELA), which provides for the liability of common carriers by railroad, in interstate or foreign commerce, for injuries to employees from negligence. The trial court has identified the question of law involved as "whether the plaintiff is an employee of a 'common carrier by railroad' for F.E.L.A. purposes under the undisputed facts of this case."

Busch is engaged primarily in the brewing of beer. Both SLRC and MRC are wholly owned subsidiaries of Busch. It is undisputed that MRC is a common carrier by rail. In the first count of his amended complaint the plaintiff alleged that SLRC "existed as a builder and repairer of railroad cars exclusively" for MRC and Busch and "loaned its employees to [MRC] for the repair, maintenance, and replacement of the latter's switches, tracks, targets and their appurtenances." Plaintiff alleged further that MRC, SLRC, and Busch

"have expressly or impliedly entered into a joint adventure as a common carrier by rail in and throughout several states of the United States by which railroad cars are built, repaired and transported with freight over tracks and its appurtenances for their mutual benefit and profit." In the second count of the amended complaint plaintiff alleged that on the date he was injured "although [he was] employed by St. Louis Refrigerator Car Company, [he] was employed by defendant, Manufacturers' Railway Company, for purposes of the aforesaid Federal Employers' Liability Act at [SLRC's] Two Utah yard in or near St. Louis, Missouri, in that St. Louis Refrigerator Car Company was a servant of Manufacturers' Railway Company, and therefore plaintiff was a subservent of Manufacturers' Railway Company."

SLRC and MRC moved for summary judgment. In denying the motion the trial court found that there were "questions of fact notwithstanding affidavits of defendants." Upon the denial of their motion for summary judgment SLRC and MRC moved that the trial court certify the cause for interlocutory appeal. The trial court granted the motion and later allowed the plaintiff's motion to supplement the record on appeal by incorporating into it the discovery depositions of six persons, including those of Eldon Harris and Ronald Stillman, whose affidavits seem to be those to which the court referred in its order denying the motion for summary judgment. Plaintiff maintains that a genuine issue of material fact exists as to whether SLRC is a mere instrumentality of MRC and Busch and as to whether the operational activity performed by SLRC for the benefit of MRC and Busch is sufficient to impose liability upon SLRC under FELA. Plaintiff does not address the theory of joint venture.

The parties agree that SLRC is engaged in the business of maintaining, repairing, rebuilding, and leasing railroad cars. SLRC owns insulated refrigerator cars but no locomotives. MRC uses its locomotives to switch cars for SLRC. The switch engines are operated exclusively by employees of MRC. MRC switches cars for Busch, Monsanto, "and all of our other industries." MRC charges SLRC a "switching fee" as it does its other customers for whom it performs such services. MRC repairs the tracks in SLRC's yards. SLRC employees clean snow and ice and apparently other debris off the tracks in SLRC's yards but may not do so in MRC's yards. MRC repairs its own engines but not its cars and operates no car repair shop. Some of its employees make minor repairs on MRC cars, but MRC contracts out major repairs to various railroads depending upon the location of the damaged car. Less than one percent of SLRC's revenue is derived from the services it performs

for MRC. Ninety-nine percent of SLRC's income is derived from the repair and rebuilding of cars of railroads other than MRC. At the time plaintiff was injured he was working on a car owned by Trailer Train, Inc. His injury was not related to switching operations. As a result of his injury plaintiff received State workmens' compensation benefits.

To ship its product to market Busch uses cars belonging to SLRC and to MRC as well as cars belonging to other railroads. Over half of MRC's revenues are derived from Busch. At times employees of SLRC perform repairs to cars within Busch's St. Louis brewery. Such repairs appear to be minor in nature, on the order of fixing a bulkhead or opening a door. To make the repairs in the brewery SLRC employees take their tools with them.

Supervisory employees of MRC do not issue instructions to or attempt to control the work of employees of SLRC. There is no horizontal movement of employees between MRC and SLRC. An employee of MRC who wished to work for SLRC would have to resign from MRC to become an employee of SLRC. SLRC and MRC have their own payrolls, separate seniority rosters, and separate management teams up to the level of vice-president of operations. Plaintiff was paid by SLRC.

SLRC, MRC, and Busch share some of the same officers and directors. For example, the record shows that August Busch III is a trustee of SLRC and at the same time is the chief executive officer and president of Busch and its chairman of the board. Walter Reisinger is, likewise, a trustee of SLRC and a member of the board of directors of Busch. John Hayward is vice-president and corporate secretary of Busch and the secretary of SLRC. Roy Chapman is the president of SLRC and the president and director of MRC. Ronald Stillman is treasurer and comptroller of SLRC and MRC and their subsidiaries. Eldon Harris is the vice-president of personnel for MRC and SLRC and their subsidiaries. He is involved in "day-to-day personnel actions, such as garnishments," and screens application but does not hire or dismiss employees.

SLRC was founded in 1878 as an association or a common law business trust in Massachusetts. Busch acquired its interest in SLRC in 1967. At the same time Busch acquired its interest in MRC. The general offices of both SLRC and MRC are located in St. Louis, Missouri, in a building owned by a subsidiary of MRC. The general offices of subsidiaries of MRC are located in the same building. MRC owns all the office equipment in that building. All of the equipment located at SLRC's shop where repairs are made, however, is owned by SLRC.

SLRC and "probably" MRC use Busch's legal department. The record indicates considerable cooperation among the companies in question, particularly with respect to matters of accounting. A consolidated income tax is filed for Busch, MRC, SLRC, and their subsidiaries.

■ We turn to plaintiff's contention that SLRC is a mere instrumentality of Busch and MRC through Busch. We find most instructive the case of *Fawcett v. Missouri Pacific R.R. Co.* (W.D. La. 1965), 242 F. Supp. 675, *aff'd* (5th Cir. 1965), 347 F.2d 233, *cert. denied* (1965), 382 U.S. 907, 15 L. Ed. 2d 159, 86 S. Ct. 242, in which the plaintiff maintained that the deceased had been an employee of a railroad within coverage of FELA at the time he had met his death and contended that "because the trucking company [for which the decedent had worked] was a wholly owned subsidiary of the defendant, it, the trucking company, was the alter ego, adjunct, subsidiary agent, and instrumentality of the railroad." The district court in *Fawcett v. Missouri Pacific R.R. Co.* (W.D. La. 1965), 242 F. Supp. 675, 678, adopted the following quotation from *Kentucky Electric Power Co. v. Norton Coal Mining Co.* (6th Cir. 1938), 93 F.2d 923, 926, as a correct statement of the law:

> "[I]t is *** well settled that a corporation is ordinarily an entity, separate and apart from its stockholders, and mere ownership of all the stock of one corporation by another, and the identity of officers of one with officers of another, are not alone sufficient to create identity of corporate interest between the two companies or to create the relation of principal and agent or to create a representative or fiduciary relationship between the two. If such stock ownership and potential control be resorted to only for the purpose of normally participating in the affairs of the subsidiary corporation in a manner usual to stockholders and not for the purpose of taking some unfair advantage of the subsidiary or using it as a mere adjunct to the main corporation or as a subterfuge to justify wrongdoing, their identity as separate corporations will not be disregarded but their respective rights when dealing with each other in respect to their separate property will be recognized and maintained. The extent of stock ownership and mere potential control of one company over another has never been regarded as the determining factor in the consideration of such cases. Something must be disclosed to indicate the exercise of undue domination or influence resulting in an infringement upon the rights of the subservient corporation for the benefit of the dominant one. Otherwise, the rights of the separate corporations in respect to

their corporate property must be governed by the rules applicable in ordinary cases. [Citations.]"

In *Fawcett*, as in the case at bar, the employee in question had never been in the employ of the common carrier, had not been hired by it, was not on its payroll, was not paid by it, and was not subject to discharge by it. The employee in *Fawcett*, as in the instant case, was not using the tools of the common carrier or doing work the common carrier was required to do. As in the instant case, the employees of the common carrier in *Fawcett* did not have supervision of the employee or of his supervisors. In *Fawcett*, as in the case at bar, the plaintiff alerted the court to beware of intercompany arrangements drawn to avoid Federal jurisdiction under the FELA. However, like the court in *Fawcett*, we find nothing indicative of such a purpose.

Similarly, in *Garrett v. Southern Ry. Co.* (E.D. Tenn. 1959), 173 F. Supp. 915, *aff'd* (6th Cir. 1960), 278 F.2d 424, *cert. denied* (1960), 364 U.S. 833, 5 L. Ed. 2d 59, 81 S. Ct. 49, in which the defendant railway had acquired the entire capital stock of Lenoir Car Works, the district court applied the principles expressed in *Kentucky Electric* quoted above and concluded that the control by the defendant railway over Lenoir was not such as to constitute Lenoir an adjunct of the defendant railway. Had the company been deemed an adjunct of the railway, the complainant, a wheel moulder in the employ of Lenoir, who claimed to have contracted silicosis from dust permeating the foundry, would have been entitled to recover under FELA as an employee of Southern Railway.

More recently, in *Barrera v. Rosco, Snyder & Pacific Ry. Co.* (N.D. Tex. 1973), 385 F. Supp. 455, *aff'd* (5th Cir. 1974), 503 F.2d 1058, the district court likewise quoted and applied the same principles expressed in *Kentucky Electric* to hold that there was no evidence to support a jury finding that a railroad equipment corporation, which employed the plaintiff, was an alter ego of the defendant railway and that there was, hence, no way the railroad could be liable to the plaintiff in an FELA action.

We note that the instant case differs somewhat from those we have cited in that a third business entity, namely Busch, owns both the railway in question as well as the company employing the injured plaintiff, as opposed to the ownership by the railway of the company employing the injured employee. However, that distinction does not, we think, limit the applicability of the cases cited to the one at bar.

■ We note too that nothing in the record suggests that at the time of his injury plaintiff was serving as the borrowed servant of MRC, that he was serving MRC and SLRC simultaneously, or that he

was a subservant of a company that was, in turn, a servant of MRC. See *Kelley v. Southern Pacific Co.* (1974), 419 U.S. 318, 42 L. Ed. 2d 498, 95 S. Ct. 472.

■ Although the record reveals a considerable amount of cooperation between Busch, SLRC, and MRC, it does not indicate that either Busch, for the benefit of MRC or itself, or MRC, by way of Busch, uses SLRC as a mere adjunct to itself or as a subterfuge or exercises undue dominion or influence infringing upon the rights of SLRC for the benefit of Busch or MRC. In short, we conclude from our review of the record, SLRC is not the mere instrumentality of either Busch or MRC by way of Busch.

The corporate relationship existing between Busch, SLRC, and MRC is, likewise, of crucial importance to the alternative theory plaintiff advances, that of operational activity. In *Edwards v. Pacific Fruit Express Co.* (1968), 390 U.S. 538, 540, 20 L. Ed. 2d 112, 114, 88 S. Ct. 1239, 1240, the Supreme Court reiterated the meaning of "common carrier by railroad":

> "This Court has held that the words 'common carrier by railroad' mean 'one who operates a railroad as a means of carrying for the public,—that is to say, a railroad company acting as a common carrier. ***' *Wells Fargo & Co. v. Taylor*, 254 U.S. 175, 187-188."

By itself, SLRC does not qualify as a "common carrier by railroad." For his alternative position plaintiff relies upon the following statement, concerning a railroad as a "unitary enterprise" for purposes of FELA, appearing in *Sinkler v. Missouri Pacific R.R. Co.* (1958), 356 U.S. 326, 330, 2 L. Ed. 2d 799, 803, 78 S. Ct. 758, 762, the facts of which plaintiff acknowledges are not comparable to those in the case at bar:

> "Thus while the common law generally regarded the torts of fellow servants as separate and distinct from the torts of the employer, holding the latter responsible only for his own torts, it was the conception of this legislation that the railroad was a unitary enterprise, its economic resources obligated to bear the burden of all injuries befalling those engaged in the enterprise arising out of the fault of any other member engaged in the common endeavor."

In *Sinkler* the petitioner was employed by the respondent railroad as a cook on the private car of respondent's general manager and was injured during switching operations contracted for and conducted by another railway company. The court described switching as "a vital operational activity of railroading consisting in the breaking up and

assembly of trains and the handling of cars in interchange with other carriers" (356 U.S. 326, 327, 2 L. Ed. 2d 799, 801, 78 S. Ct. 758, 760) and held that when a railroad employee's injury is caused in whole or in part by the fault of others performing under contract, operational activities of his employer, such others are "agents" of the employer for purposes of liability under FELA.

On the basis of the statement in *Sinkler* quoted above plaintiff argues that "the recognition by the *Sinkler* court that railroading is a unitary enterprise and that a railroad can be responsible for a tort committed by another entity 'performing operational activities' or 'furthering operational activities' of a railroad, is applicable to this case." Plaintiff refers to his earlier discussion of "how the rail service provided by MRC and SLRC employees within the MRC rail network operates as a unitary enterprise" and asserts that "the regular car inspection and car repair work performed by SLRC employees is the performance of operational activities of MRC, or *** furthers the operational activity of MRC." Plaintiff concludes,

> "In summation, the unitary enterprise engaged in by Anheuser-Busch, Inc., MRC and SLRC to service industries located on the MRC rail network in St. Louis, Missouri, must be responsible for all injuries arising out of the 'fault of any other member engaged in the common endeavor.' "

We have, however, already determined that SLRC is not the mere instrumentality of either Busch or MRC by way of Busch. That being the case, MRC is but one of various companies for whom SLRC repairs railroad cars, and SLRC is but one of various companies that repair railroad cars for MRC. It is undisputed that at the time plaintiff was injured he was working on a car owned by Trailer Train, Inc. There is no suggestion in the record that he was working on a car in any way associated with MRC. If we were to hold SLRC liable under FELA for plaintiff's injuries, sustained while working on a car in no way associated with MRC, we would have to do so merely because SLRC also repairs cars for MRC. In fact, we would have to do so despite the fact that the work SLRC does for MRC constitutes less than one percent of SLRC's business. Absent an improper relationship between Busch, SLRC, and MRC, evidence of which we have not found, there is no merit to plaintiff's argument.

The purpose of summary judgment is to determine whether a genuine issue exists as to any material fact that would require a trial. (*Williams v. Chicago & Eastern Illinois R.R. Co.* (1973), 13 Ill. App. 3d 596, 300 N.E.2d 766.) We must disagree with the plaintiff that a genuine issue of material fact exists as to whether SLRC is a

mere instrumentality of Busch and MRC and as to whether the operational activity performed by SLRC for the benefit of MRC and Busch is sufficient to impose liability upon SLRC under FELA. Thus, under neither theory the plaintiff advances may he be considered an employee of a "common carrier by railroad" for purposes of FELA. For these reasons we reverse the judgment of the trial court.

Reversed.

KASSERMAN, J., concurs.

JUSTICE HARRISON, dissenting:

I respectfully dissent.

I feel that the trial court was correct in denying summary judgment in this case because the relationship of the defendants in their operations presented a genuine issue of fact as to whether the corporate forms adopted involved a scheme to avoid the provisions of the Federal Employers' Liability Act. (45 U.S.C. sec. 51 *et seq.* (1976).) A legal fiction of distinct corporate existence will be disregarded to circumvent a fraud. (*Dregne v. Five Cent Cab Co.* (1941), 381 Ill. 594, 603, 46 N.E.2d 386.) When corporate form has been used to avoid a statute, the corporate entity will be disregarded in the interests of justice. Courts will, and should, view carefully schemes of this nature to prevent evasion of statutory or constitutional duties imposed by the State. (*1242 Lake Shore Drive Building Corp. v. Hughes* (1938), 369 Ill. 476, 17 N.E.2d 38.) The statutory rights of the plaintiff in this case and other employees of St. Louis Refrigerator Car Company, under the provision of the Federal Employers' Liability Act, may have been violated. The purpose of summary judgment is not to try an issue of fact and, although inference may be drawn from undisputed facts, it should not be granted unless those facts are susceptible of but a single inference. Where reasonable men could arrive at different results, questions cannot be determined as a matter of law. The right of a movant to summary judgment must be free from doubt. *Doran v. Pullman Standard Car Manufacturing Co.* (1977), 45 Ill. App. 3d 981, 360 N.E.2d 440.

For the foregoing reasons, I would affirm the order of the trial court in denying summary judgment.