Arthur M. Holland, d/b/a Malcolm-Howard Advertising Agency, Appellee, v. Joy Candy Manufacturing Corporation, and Joy Candy Shoppes, Inc., Defendants.

On Appeal of Joy Candy Manufacturing Corporation, Appellant.

Gen. No. 47,051.

First District, Second Division.
September 24, 1957.
Rehearing denied October 10, 1957.
Released for publication October 10, 1957.

Anagnost & Anagnost, of Chicago (Catherine Anagnost, of counsel) for appellant.

Abraham Drucker and Arthur Abraham, of Chicago, for appellee.

JUDGE FEINBERG delivered the opinion of the court.

Joy Candy Manufacturing Corporation, one of the defendants, appeals from a judgment entered against it for $6,304 upon a trial without a jury.

The action was brought against the appealing defendant and Candy Shoppes, Inc., to recover for services rendered by plaintiff, an advertising agency, in the preparation and placing of advertising for the product of defendants. Defendant Candy Shoppes admitted that it owed $5,644 but denied that it owed the claimed balance of $660. Partial judgment was entered against Candy Shoppes for the admitted amount, and a trial ordered as to the balance. Defendant Candy Manufacturing Company denied any services were rendered to it by plaintiff. Upon the trial a further judgment of $660 was entered against Candy Shoppes, and judgment was entered against Candy Manufacturing Company. There is no appeal by defendant Candy Shoppes.

The evidence discloses that Alex Kanelos and Peter Stefanos operated the candy business as a partnership. In 1931 they organized both defendant corporations. Candy Shoppes was the retail outlet for the candy manufactured by defendant manufacturing company. The stock of both companies was divided equally between Kanelos and Stefanos, and both were officers and directors of the two companies. Each of them subsequently divided his stockholdings with his wife. Kanelos died in 1947, and his widow, Edith Kanelos, since 1951 acquired ownership of all of the outstanding stock of both companies, including the stock of Stefanos. She was president, treasurer and director of both corporations. Two others occupied nominal positions of secretary, directors and vice president of both corporations. After she acquired all of the stock, plaintiff continued to render the advertising service, the same as he had before her acquisition of the stock. She actively managed both corporations from the same building where both corporations had their offices.

She engaged plaintiff; consulted him about advertising programs; authorized and approved plaintiff's services, as well as the advertising copy.

During the years 1953 and 1954, statements covering plaintiff's services were sent to Candy Shoppes and the Manufacturing Corporation. No objection was made by the Manufacturing Corporation to any of the statements rendered to it, and none of them were returned to plaintiff. Plaintiff received checks of the Candy Shoppes, signed by Edith Kanelos. Both companies had the same telephone number and switchboard; the same bookkeeper and time clerk, and shared a double desk in the same office. There was no lease between the two companies, and no evidence that Candy Shoppes paid any rent to the Manufacturing Corporation for its office space and facilities. The two companies had separate bank accounts.

The Manufacturing Corporation delivered the candy it manufactured to Candy Shoppes on consignment, reserving in itself title to the merchandise, to protect itself against future creditors of Candy Shoppes. The inference is clear that it refused to extend any credit to Candy Shoppes, so that in the event of insolvency or liquidation of Candy Shoppes, it could claim title to the inventory and thereby deprive the creditors of Candy Shoppes of any opportunity to enforce collection of their claims against the assets of Candy Shoppes. Under this arrangement between the two companies Candy Shoppes, except for fixtures, had virtually no assets against which creditors could enforce their claims.

Every ten days an inventory was taken by Candy Shoppes, and a check for candy sold was drawn by it, payable to the Manufacturing Corporation. The evidence further discloses that plaintiff was not informed by Edith Kanelos, and he did not know during the period of service, that the Manufacturing Corporation

and Candy Shoppes were two separate corporations conducted by her.

The controlling question is whether the separate corporate entities can be used as a shield against liability, if, under all the circumstances, it would work a fraud upon creditors dealing with them.

In Dregne v. Five Cent Cab Co., 381 Ill. 594, affirming our holding, 313 Ill. App. 539, the court said (pp. 602–3):

"A corporation is an entity separate and distinct from its shareholders and, generally, from other corporations with which it may have relations. Indeed, the fact that the shareholders of two corporations are identical does not, necessarily, mean that the two corporations are to be considered as a single entity. Nor do the facts that one corporation owns shares in another and that they have mutual dealings require that they be regarded as one and the same corporation. Conversely, the legal fiction of distinct corporate existence will be disregarded when necessary to circumvent fraud or where the corporation is so organized and controlled, and its affairs so conducted, as to make it a mere instrumentality of another corporation. (Superior Coal Co. v. Department of Finance, 377 Ill. 282; In re Watertown Paper Co., 169 Fed. 252; Berkey v. Third Avenue Railway Co., 244 N. Y. 84; Bergenthal v. State Garage & Trucking Co., 179 Wis. 42.) In particular, it has been held that if the one corporation is merely a dummy or sham, the distinct corporate entity will be disregarded and the two corporations will be treated as one. Wallace v. Tulsa Yellow Cab Taxi & Baggage Co., 178 Okla. 15."

To the same effect are many Appellate Court decisions, among them Kuttner & Kuttner, Inc. v. Career Studios, Inc., 345 Ill. App. 504; Craftsmen Finance Co. v. Landfield Finance Co., 7 Ill.App.2d 541; McDermott v. A. B. C. Oil Burner Sales Corp., 266 Ill. App. 115.

We think the trial court was justified in viewing Candy Shoppes as a mere instrumentality of the other corporation, and that the affairs of the two corporations were so managed and controlled by the same interlocking officers, directors and single stockholder, as to constitute one corporate entity in its dealings with creditors.

The judgment is correct and is affirmed.

Affirmed.

KILEY, P. J., concurs.

LEWE, J., took no part.