321 F.2d 320
 ALLIED CHEMICAL CORPORATION, Plaintiff-Appellee,
v.
Albert RANDALL, etc., et al., Defendants, Third-Party
Plaintiffs and Counter Defendants-Appellees, and Mark
GILBERT and Presto Products Corporation, Defendants,
Third-Party Defendants and Counter Plaintiffs-Appellants.
ALLIED CHEMICAL CORPORATION, Plaintiff-Appellant,
v.
Albert RANDALL, Individually and doing business as Rand
Chemical Company, Defendant, Third-Party Plaintiff
and Counter Defendant-Appellee.
 Nos. 13945, 13946.
 United States Court of Appeals Seventh Circuit.
 July 1, 1963, Rehearing Denied in No. 13945 Sept. 12, 1963.
 
 David M. Sloan, John R. Montgomery, Pritchard, Chapman, Pennington, Montgomery & Sloan, Chicago, Ill., for Allied Chemical Corp.
 Harry Jaffe, Chiecago, Ill., for Randall.
 Charles I. Calisoff, Jay A. Canel, Chicago, Ill., Canel & Canel, Chicago, Ill., of counsel, for Gilbert and Presto Products Corp.
 Before HASTINGS, Chief Judge, and SCHNACKENBERG and CASTLE, Circuit judges.
 HASTINGS, Chief Judge.
 
 
 1
 This action began as a suit by plaintiff Allied Chemical Corporation (Allied) against defendants Albert Randall and Rand Aerosol Corp. (Aerosol) to recover the value of certain shipments of Genetron 12, a propellant used in the packaging of aerosol paints. Aerosol failed to appear, and a default judgment was entered against it. Execution on this default judgment was served and returned unsatisfied.
 
 
 2
 Randall filed an answer, and after default judgment was entered against Aerosol, Randall was given leave to file a third-party complaint against Mark Gilbert and Presto Products Corporation (Presto). Randall's third-party complaint alleged in substance that Presto, which had purchased the stock of Aerosol from Randall, and Gilbert, who owned substantially all of Presto's shares, had converted the assets of Aerosol to themselves and thereby became liable to Allied for the value of the shipments in question.
 
 
 3
 Allied thereafter amended its complaint to include Gilbert and Presto as defendants. This amended complaint sought an accounting from Randall with respect to money received and warranties made by him in connection with the sale of the capital stock of Aerosol to Presto. The amended complaint also sought an accounting from gilbert and Presto with respect to moneys received by them after the sale of Aerosol's capital stock to Presto.
 
 
 4
 Presto then filed a counterclaim against Randall, claiming he had breached the warranties made in connection with Presto's purchase of Aerosol's stock. Gilbert counterclaimed against Aerosol for the value of services he allegedly rendered Aerosol to enable it to continue in business.
 
 
 5
 The cause was tried to the court which entered findings of fact and conclusions of law, after hearing evidence on behalf of all parties except Aerosol, against which the default judgment had been entered previously. Judgment was entered in favor of plaintiff Allied and against defendants Gilbert and Presto in the amount of $11,898.36, the stipulated balance due on the purchase of Genetron 12, and in favor of Presto against Randall on Presto's counterclaim in the amount of $6,058.24, the amount paid by Presto for the purchase of Aerosol's capital stock.
 
 
 6
 Defendants Gilbert and Presto appeal from the judgment against them in favor of plaintiff Allied (No. 19945). Presto appeals from the judgment entered in its favor against Randall, claiming the amount of the judgment is inadequate (No. 13945). Plaintiff Allied cross-appeals from the judgment insofar as the judgment denied Allied's claims against Randall (No. 13946). Albert Randall, one of the appellees in No. 13945 and the only appellee in No. 13946, has not participated in this appeal. Only Allied Chemical Corporation, Mark Gilbert and Presto Products Corporation have appeared.
 
 
 7
 We hold initially that the findings of fact made by the court are not clearly erroneous; they are amply supported by the evidence. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.
 
 
 8
 Gilbert and Presto contend the trial court erred in considering Allied a creditor of Aerosol and entering judgment for the full amount due Allied against Gilbert and Presto.
 
 
 9
 The court below made no specific finding that the debt due Allied was a debt of Aerosol. After setting out findings of fact, the court did, however, refer to the debt twice as being a debt owed by Aerosol to Allied. This is tantamount to a specific finding that the debt due Allied was a debt of Aerosol.
 
 
 10
 There was no error in considering Allied a creditor of Aerosol. The shipments of Genetron 12 were delivered to the premises which were used for all operations conducted in Aerosol's name. Payments on account were made to Allied by checks drawn on an account carried in Aerosol's name. There was testimony that all of the Genetron 12 received from September 21, 1956 to September 16, 1957, the period in question, was used exclusively in Aerosol's products. Gilbert testified that he knew before Presto purchased Aerosol's stock on November 1, 1957 that the amounts due Allied were listed on Aerosol's accounts payable ledger. The evidence on this question, summarized above, amply supports the conclusion of the trial court that Allied was a creditor of Aerosol.
 
 
 11
 Shortly after Presto's purchase of Aerosol's stock, Gilbert and Presto caused the entire inventory of Aerosol to be sold to Ever-Ready, Inc., another corporation owned and controlled by Gilbert, for a price of $5,618.76. This amount was substantially below the book value of the inventory. Since no notice of the sale of such inventory was given to Allied or any other creditor of Aerosol in the manner required by the Illinois Bulk Sales Act, the trial court correctly held this sale to be a violation of the Act. Ill.Rev.Stat. ch. 121 1/2 78-80a (1957).
 
 
 12
 At the time of Presto's purchase of Aerosol's capital stock, Presto also purchased certain promissory notes from Randall amounting to $5,378.82. These notes had been made by Aerosol in favor of Randall before Randall sold Aerosol's stock to Presto. Three days after Ever-Ready acquired Aerosol's inventory Gilbert and Presto caused a check for $5,378.82 to be issued out of Aerosol's funds to Presto, Aerosol's sole stockholder, in full payment of the promissory notes.
 
 
 13
 During the period when Presto and Gilbert owned and operated Aerosol, Aerosol paid Ever-Ready at least $15,300 as reimbursement for 'salaries, rental, electricity, postage, insurance and other costs allegedly advanced on behalf of Aerosol.' The trial court found as a fact that these 'charges were arbitrary and unreasonable in amount, were unrelated to the legitimate needs of the corporation, and were not authorized by any duly elected officer of Aerosol or by its board of directors.'
 
 
 14
 At all times after Presto acquired the capital stock of Aerosol, Gilbert owned substantially all of the shares of Presto and Ever-Ready. He was in full control of both corporations, as well as of Aerosol through his control of Presto. Gilbert personally participated in or ordered the transactions involving the three corporations and treated all as if they were his sole property.
 
 
 15
 After acquiring control of Aerosol, Gilbert caused all of Aerosol's current liabilities to be discharged, with the exception of the amount he knew was carried on Aerosol's books as being due Allied. Gilbert then proceeded, while Aerosol was insolvent, to render Aerosol unable to satisfy Allied's claim by causing the sale of Aerosol's inventory to Ever-Ready, causing the promissory notes to be paid to Presto and causing Ever-Ready to charge arbitrary and unreasonable amounts for services purportedly rendered for Aerosol.
 
 
 16
 The circumstances of this case require that the corporate entities of Gilbert's corporations be disregarded, for they did not exist apart from Gilbert's will. The corporations were treated as different parts of one operation. To recognize the corporate entities when in fact they were but the alter ego of Gilbert would promote injustice. Shamrock Oil and Gas Co. v. Ethridge, D.C.D.Colo., 159 F.Supp. 693 (1958); Fidelity and Casualty Company of New York v. Glass, Mo.Ct.App., 327 S.W.2d 538 (1959). See Holland v. Joy Candy Mfg. Corp., 14 Ill.App.2d 531, 145 N.E.2d 101 (1957).
 
 
 17
 'The effect of applying the alter ego doctrine, of course, is that the corporation and the person who dominates it are treated as one person, so that any act committed by one is attributed to both, and if either is bound, by contract, judgment, or otherwise, both are equally bound.' Shamrock Oil and Gas Co. v. Ethridge, supra, 159 F.Supp. at 697.
 
 
 18
 The judgment entered against Gilbert and Presto for the full amount due Allied finds substantial support in the record.
 
 
 19
 Presto complains that the judgment in its favor against Randall was inadequate. This judgment was for the amount paid by Presto to Randall for Aerosol's shares and was the extent of Presto's investment in Aerosol. Under the circumstances of the instant case, the district court properly limited Presto's recovery to the amount it paid Randall for his Aerosol shares.
 
 
 20
 Gilbert complains of the failure of the trial court to enter a judgment in his favor against Randall due to Randall's admitted breaches of the warranties contained in the agreement of sale of Aerosol's shares. The warranties in this agreement were in favor of Presto, the purchaser, not in favor of Gilbert. As between Randall on the one hand and Presto and Gilbert on the other there is no ground for disregarding Presto's corporate entity. The district court correctly refrained from entering a judgment against Randall in Gilbert's favor.
 
 
 21
 Allied contends that the trial court erred in failing to hold Randall personally liable to it for the unpaid account. With respect to this cross-appeal, No. 13946, Allied states in its brief: 'Although plaintiff is convinced that the trial court erred in failing to enter judgment in its favor against Randall, * * * it would have been content to abide by the decision below * * * (except for the appeal taken by Gilbert and Presto).' On oral argument, Allied's counsel agreed that its appeal could property be described as 'protective.'
 
 
 22
 In view of these concessions by Allied and our conclusion that the judgment against Gilbert and Presto in favor of Allied was correct, we do not reach the merits of the cross-appeal and affirm the finding of the trial court that Randall was not personally liable for the debt due Allied.
 
 
 23
 Allied's prayer for the assessment of all costs of these appeals, including a reasonable fee for its attorneys, is denied.
 
 
 24
 The judgments entered by the district court are in all respects affirmed.
 
 
 25
 Affirmed.