FEDERAL INSURANCE COMPANY, Plaintiff-Appellee, *v.* MARITIME SHIPPING AGENCIES, INC., Defendant.—(GLACIER MARINE AGENCIES, LTD., *et al.*, Supplementary Defendants-Appellants.)

First District (2nd Division)   No. 76-1197

Opinion filed August 15, 1978.

Bernard Wiczer, of Chicago, for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stanley J. Davidson, Douglas M. Reimer, and Donald L. Mrozek, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff, Federal Insurance Company (Federal), is seeking to obtain satisfaction of a judgment against Maritime Shipping Agencies (Maritime), in this supplementary proceeding (Ill. Rev. Stat. 1977, ch. 110, par. 73) against Glacier Marine Agencies, Ltd. (Glacier), Morrie Boas, and Sheldon Shalett. The trial court granted plaintiff's motion for summary judgment, and the defendants appeal. The issues on appeal are whether summary judgment (Ill. Rev. Stat. 1977, ch. 110, par. 57) is a proper disposition of a supplementary proceeding; if so, whether the trial court properly granted summary judgment for Federal; whether the trial court erred in striking portions of an affidavit filed by defendants in support of their own motion for summary judgment and in opposition to Federal's motion for summary judgment; and whether the trial court abused its discretion in refusing defendants' request to file supplementary affidavits

with their motion for rehearing. There are also numerous motions pending before this court discussed later in this opinion. The validity of Federal's judgment against Maritime is not challenged in this appeal.

Federal became obligated to pay certain penalties and duties to the United States Customs Office on behalf of defendant Maritime pursuant to a "vessel, vehicle, or aircraft" bond it executed in favor of Maritime on April 29, 1971. Federal then filed a complaint seeking indemnity against Maritime for the payments. On February 27, 1975, a default judgment was entered in favor of Federal for $7,636.13, plus costs.

On March 10, 1975, Federal issued a citation to discover assets to Maritime, Sheldon Shalett, and Morrie G. Boas. Boas was deposed on August 11, 1975, and gave the following sworn testimony.

Maritime was formed in 1966. During the first years of its existence, it engaged in the business of "vessel husbandry," arranging for dock space, supplying provisions and stevedoring services, and caring for a ship's crew while in port, for a number of shipowners. Brokerage and chartering services were also among Maritime's early business activities. In the late 1960's or early 1970's, Maritime became the general agent for a now-bankrupt Panamanian shipping corporation known as Mardina Lines, S.A., and thereafter ceased all business activities on behalf of other shipowners. Maritime handled all of Mardina's operations in the United States, which included operating Mardina's ships, "time" chartering vessels, booking cargoes, arranging for the loading and unloading of cargoes, collecting freights, and paying Mardina's bills.

Boas testified that the president of Mardina Lines was Alan Cameron. Boas and Shalett were the secretary and vice-president, respectively, of Mardina. Mardina was formed in 1969, and had a checking account at the First National Bank of Chicago on which Cameron, Boas, Shalett, William Boas (Morrie Boas's son) and Richard Forbes, who later became treasurer of Mardina, were authorized to write checks. Cameron, a British citizen, operated as the general agent of Mardina Lines in Europe through his company, Pumice Aggregates, Ltd.

Maritime owned no real estate. It leased offices at 1010 Dixie Highway in Chicago Heights, a building in which neither Maritime nor any of its principals had an interest. Maritime maintained two bank accounts at the First National Bank of Chicago Heights, one designated as the "regular" account, the other designated as the "agency" account. Boas, Shalett, and William Boas were authorized to write checks on both accounts. Boas explained that the "agency" account was used primarily to conduct Maritime's early business activities—vessel husbandry, brokering, and chartering. When Maritime became general agent for Mardina, the agency account became largely dormant, the Mardina business flowing through Maritime's "regular" bank account.

Boas testified that Glacier was formed on August 1, 1974, with Sheldon

Shalett and him as principals. He described Glacier as a marine agency, engaged in the vessel husbandry business and in booking cargoes for various shipping lines. Glacier occupied the same offices as Maritime at 1010 Dixie Highway in Chicago Heights. Boas explained the reasons for which Glacier was formed:

"Q. All right. Now, what happened in August or September of '74?

A. Well, I think what you are trying to get at is why did Mr. Shalett and I set up a company called Glacier Marine?

Q. Well, I am trying to get at all the events surrounding the corporation.

A. Well, Maritime Shipping Agencies, Inc. as I stated before, an Illinois corporation, whose sole function was in the past several years as general agents for Mardina Lines.

When Mardina Lines got into financial trouble, Maritime Agencies, Inc., was not legally involved. However, there was a connotation to the shipping world and to the world in general that Maritime and Mardina were one in the same whereas while it was legally not true.

We were not interested in fighting every Tom, Dick and Harry who would make an attack against Maritime for Mardina obligations because in the steamship business you are involved with—you are more familiar with than I, but you are involved with writs of foreign attachment and it is nothing for somebody to come up and tie up a bank account.

So consequently we felt that we could not stay in business and operate through Maritime because we felt that we would be spending the best part of our lives defending Maritime, so we ceased to let Maritime function.

We have not disbanded the corporation. We are not running away saying that we don't know Maritime. The name is on the door, but we commenced our operations under the name of Glacier Marine Agencies whereby we felt we could operate without the harassment that we would be submitted to through Maritime."

At a later point in the examination, Boas stated:

"A. Well, the office is occupied by Glacier Marine. As you can see, we have ceased doing business as Maritime back in September in that area. Consequently we don't consider this as Maritime. We keep the name on the door. We are not running away from Maritime, but we are not doing any business as Maritime so from that point on it is all done as Glacier Marine. * * *"

Glacier also maintained its bank account at the First National Bank of

Chicago Heights. Boas, Shalett, and William Boas were authorized to write checks on that account. When Glacier was formed, all of Maritime's employees became employed by Glacier.

Boas testified to the terms of an agreement executed between Maritime and Glacier on August 7, 1974. Under that agreement, Maritime sold its office furniture and supplies to Glacier "on behalf of funds" that Glacier had loaned to Maritime. Glacier agreed to assume those obligations of Maritime incurred on Maritime's behalf (telephone, telex, etc.). Glacier did not assume those obligations which Maritime incurred on behalf of Mardina Lines. Boas testified that the office furniture and supplies constituted virtually all of the assets of Maritime.

Boas testified that at the time Glacier was formed, Maritime had a total indebtedness of approximately $55,000. On September 3, 1974, approximately $19,000 was deposited in Maritime's regular bank account. Two days later, $19,000 was transferred to Glacier's account "to pay Maritime bills."

Following the citation examination, Federal garnished Maritime's bank account at the First National Bank of Chicago Heights and obtained $106.27 in partial satisfaction of the judgment.

On September 3, 1975, Federal filed a petition for a turnover order and other equitable relief against Glacier, Boas, and Shalett pursuant to the citation to discover assets. The petition alleged that Maritime had fraudulently conveyed its assets to Glacier intending to defraud the former's creditors, including Federal. The petition sought an order directing Boas and Shalett, as officers of Glacier, to turn over $7,636.13, plus $10,000 in punitive damages. In the alternative, the petition sought an order directing Boas and Shalett to deposit those sums in the Maritime bank account, and then to turn the money over to Federal. The petition also sought judgment against Boas and Shalett personally.

Maritime moved to strike the petition, alleging that Boas, Shalett, and Glacier had not properly been made supplementary defendants, and that a disposition of Federal's petition would not constitute *res judicata* and would subject them to harassment and unnecessary expense to respond to future citations. Defendants prayed that the court deny the petition and award them each $10,000 in punitive damages.

Attached to defendants' response was a copy of the agreement between Maritime and Glacier dated August 7, 1974. The agreement contained recitals that Glacier had loaned Maritime the sum of $25,992.82; that Glacier agreed to advance Maritime additional sums for the payment of additional indebtedness expected to aggregate approximately $40,000; and that Glacier had offered to purchase from Maritime "certain tangible and intangible personal property." The parties agreed that Maritime would sell the property for $15,000, and that any advancement of funds to

Maritime by Glacier in excess of $15,000 would constitute a loan and would be evidenced by a promissory note. The agreement was signed by Shalett as president of both companies. Boas attested to Shalett's signatures in his dual capacity as secretary of both Maritime and Glacier. Nothing in the agreement supports Boas's sworn testimony that Glacier agreed to assume the obligations of Maritime or that it assumed only those obligations of Maritime not incurred on behalf of Mardina.

On March 15, 1976, Federal filed a motion for summary judgment, alleging that the financial statements and exhibits of Maritime showed that as of August 1, 1974, Maritime was insolvent; that on or about August 7, 1974, Maritime transferred all of its assets to Glacier; that shortly after Federal demanded that Maritime pay its debt to Federal, $19,000— virtually all of the money in the Maritime bank account—was transferred to Glacier; and that Maritime and Glacier had the same shareholders, officers, and directors, shared the same office space, had the same employees, the same authorized signatures on their respective bank accounts, and participated in the same business. The motion further alleged that there were no material questions of law or fact; that Glacier is the *alter ego* of Maritime; that Boas and Shalett are the *alter egos* of Maritime; that the $19,000 transfer of funds from Maritime to Glacier on August 7, 1974, constituted an illegal preference to Glacier, Boas, and Shalett; and that the transfers constituted a fraud in fact and in law.

On March 29, 1976, defendants filed their own motion for summary judgment. This motion alleged the legitimacy of the transactions between Maritime and Glacier and the absence of any fraud. It further alleged that Maritime was never insolvent and owned accounts receivable more than adequate to satisfy Federal's judgment. The motion for summary judgment was supported by a lengthy affidavit by Morrie Boas. Federal raised numerous objections to portions of this affidavit, and the trial court sustained a number of these objections.

Defendants also responded to Federal's motion for summary judgment, alleging that Federal did not become a creditor of Maritime until November 15, 1974, long after the transfers between Maritime and Glacier. The answer denied that Maritime was ever insolvent.

The trial court granted Federal's motion for summary judgment, finding that the record disclosed a unity of interest and ownership among Maritime, Glacier, Boas, and Shalett, and that Glacier, Boas, and Shalett are the *alter egos* of Maritime.

Defendants moved for rehearing, arguing that the court's findings were not sufficient in law or in equity to sustain the order; that there were material issues of fact unresolved; that the court erred in failing to grant defendants an opportunity for a trial by denying them an opportunity to present evidence; and that the court erred in considering plaintiff's motion

for summary judgment before considering defendants' motion for summary judgment. Defendants also moved to file supplementary affidavits of Morrie Boas and Bernard Wiczer (their attorney) in response to plaintiff's motion for summary judgment, defendants' motion for summary judgment, and defendants' petition to vacate or for rehearing. The court denied both motions and this appeal followed.

## I.

Defendants maintain they were denied their right to a trial on plaintiff's petition for turnover order, relying on *Meggison v. Stevens* (1st Dist. 1974), 21 Ill. App. 3d 505, 316 N.E.2d 297, where this court held: "The statutes and rules which govern supplementary proceedings all contemplate that a third party claiming an interest in the property involved must be given a 'trial * * * as in other civil cases.' " (21 Ill. App. 3d 505, 509.) There, defendant's request to present a defense was denied because the trial court was under the erroneous impression that the case was before him on the pleadings and the citation examinations by agreement of the parties.

Defendants distinguish this court's opinion in *Alan Drey Co. v. Generation, Inc.* (1st Dist. 1974), 22 Ill. App. 3d 611, 317 N.E.2d 673, where we rejected a similar contention because one of the defendants had not requested the opportunity to present a defense until after the court had entered its findings. Defendants contend *Drey* is distinguishable in three ways: that defendants in the instant case consistently demanded the opportunity to offer evidence in its defense throughout the proceedings and prior to the court's decision; that the court, in an order dated February 4, 1976, acknowledged their demands to present evidence; and that the defendants never submitted the matter to the trial court for disposition on the record.

The order of February 4, 1976, referred to does not support defendants' contentions. It states, in relevant part:

> "THIS MATTER coming on to be heard for a hearing on Federal Insurance Company's Petition for a Turnover Order and for Other Equitable Relief, due notice having been given and all parties agreeing that such hearing should be continued to March 19, 1976 at 12:00 P.M. and all parties hereto being represented by counsel and Mr. Maury Boas being present and the court being fully advised in the premises; * * *."

The rest of the order merely prohibits defendants from disposing of or further encumbering any liquid assets of Glacier to maintain the *status quo* pending the hearing. There is no reference to defendants' alleged demands for a full trial on the merits. To further support their contention, defendants' brief asserts certain matters which they admit are not of

record. The record does not support defendants' contentions that they were demanding a trial.

Section 73(1) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 73(1)) provides that the procedure for conducting supplemental proceedings shall be prescribed by rules. Section 73(5) (Ill. Rev. Stat. 1977, ch. 110, par. 73(5)) provides that the rights of any person cited (other than the judgment debtor) and the rights of any adverse claimant shall be asserted and determined pursuant to the law relating to garnishment proceedings. Supreme Court Rule 277(e) (Ill. Rev. Stat. 1977, ch. 110A, par. 277(e)) provides that the citation examination shall be before the court, or if the court so orders, before an officer authorized to administer oaths designated by the court, unless the judgment creditor elects by so indicating in the citation or subpoena served or by requesting the court to so order, to conduct all or a part of the hearing by deposition as provided by the rules for discovery depositions.

■■ Section 11(b) of the Garnishment Act (Ill. Rev. Stat. 1977, ch. 62, par. 43(b)) provides that the trial shall be conducted as in other civil proceedings. The provisions of the Civil Practice Act, and all existing and future amendments thereto, apply to proceedings under the Garnishment Act, except as otherwise expressly provided. The Garnishment Act does not speak about summary judgments. Therefore, section 57 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57), which provides for summary judgment, is applicable to supplementary proceedings. Defendants were not denied their right to a trial.

## II.

Defendants next contend that the trial court erred in striking portions of the affidavit of Morrie Boas filed in support of their response to Federal's motion for summary judgment and with their own motion for summary judgment.

The hearing on Federal's motion for summary judgment took place on March 29, 1976. The report of proceedings for that date was not originally filed with the record on appeal. Subsequent to the filing of the record on appeal, defendants moved to supplement the record with the March 29, 1976, report of proceedings. Initially, this court granted defendants' motion to supplement the record. We subsequently vacated that order *sua sponte* and ordered that amendment of the record be pursuant to Supreme Court Rule 329 (Ill. Rev. Stat. 1977, ch. 110A, par. 329). On March 30, 1978, counsel for defendants filed the March 29, 1976, transcript, complete with a certificate of correctness by the trial judge, without motion or authorization by this court.

■■ Shortly before the date of oral argument before this court, counsel for Federal moved to strike the March 29, 1976, report of proceedings as

having been improperly filed. On May 16, 1978, the date for oral argument of this cause, defendants filed a motion to supplement the record pursuant to Rule 329. At oral argument, counsel for Federal maintained that the March 29, 1976, report of proceedings was entirely supportive of Federal's position and conceded that his objections to its being filed were largely technical. We agree and can see no reason to prohibit defendants from filing the supplemental report of proceedings. Defendants' motion to supplement the record on appeal with the March 29, 1976, report of proceedings is hereby granted.

Our review of that transcript reveals that there is no merit to the arguments raised by defendants. Defendants contend that the trial court construed the Boas affidavit narrowly and as inadmissible statements as if the affiant were testifying in court; that the trial court failed to indicate its reasons for striking portions of the affidavit; and that Federal failed to make a written motion to strike portions of the affidavit.

A fair reading of the March 29, 1976, transcript reveals that counsel for Federal stated the precise basis for each of his objections, and that where the objection was sustained, it was sustained on the basis stated by counsel.

■■ A fair reading of the transcript also disposes of the merits of defendants' arguments. Supreme Court Rule 191(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 191(a)) requires that an affidavit in support of or in opposition to a motion for summary judgment shall be made on the personal knowledge of the affiant; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions, but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto. It also provides that if all of the facts to be shown are not within the personal knowledge of one person, two or more affidavits shall be used. Counsel's objections related to these criteria, and the record supports the various rulings of the trial court. Defendants will not be heard to complain of prejudice resulting from their failure to file an affidavit in conformity with Rule 191. Documents supportive of certain statements in the affidavit were not attached thereto; statements contained therein were in some instances legal conclusions and in others hearsay, to which the affiant, if sworn as a witness, was clearly incompetent to testify. The trial court committed no error in striking portions of the Boas affidavit.

Defendants argue that it was error for the trial court to entertain Federal's motions because they were not made in writing. Defendants have failed, however, to present any authority which states that an

affidavit may be contested only by written motion. Defendants cite *Scharf v. Waters* (1st Dist. 1946), 328 Ill. App. 525, 66 N.E.2d 499, and *Baum v. Martin* (2d Dist. 1948), 335 Ill. App. 277, 81 N.E.2d 757, in support of this proposition. In both of these cases, however, no motion to strike the affidavits was filed in the trial courts. There, the issue was raised for the first time on appeal, and the thrust of the courts' decisions in those cases was that the issue should have been raised in the trial court.

■ Furthermore, the record supports Federal's contention that its counsel was not served with a copy of the Boas affidavit until minutes before the scheduled hearing on Federal's motion for summary judgment. Defendants will not be heard to complain of their lack of notice and surprise under these circumstances.

■ Defendants also contend that the trial court erred in refusing to allow them to file supplementary affidavits with their motion for rehearing. These affidavits, defendants contend, were designed to correct the deficiencies in the original Boas affidavit. Defendants have not presented any argument as to the nature of any abuse of discretion alleged to have been committed by the trial court. Nor have defendants cited any cases where an appellate court has found an abuse of discretion in a similar situation. We conclude the argument has no merit.

### III.

In the trial court, Federal advanced four theories in urging that the court hold Glacier, Boas, and Shalett liable for the judgment: that Glacier, Boas, and Shalett were the *alter egos* of Maritime; that the transfer of certain funds and assets from Maritime to Glacier constituted an illegal preference among creditors; that these transfers constituted a fraud in fact; and that the transfers constituted fraud in law. Federal concedes in its brief that the latter three theories required proof that at the time the transfers were made, Maritime was insolvent.

The record is in conflict on the question of Maritime's solvency at the time of the transfers. Federal relies principally on a statement made by Boas during the citation examination, in response to a leading question, that the "sale" of the Maritime office equipment to Glacier was a transfer of substantially all of the assets of Maritime. However, the record shows that subsequent to this transfer, Maritime received a payment of $19,000. This might indicate that at the time of the office furniture transaction, Maritime possessed certain other accounts receivable. In his affidavit, Boas stated that Maritime possessed accounts receivable sufficient to satisfy Federal's judgment. The balance sheets of record indicate that Maritime had accounts receivable. Thus, if Federal is entitled to a summary judgment, it must be on an *alter ego* theory, as there remains

unresolved the question of Maritime's solvency. The trial court did not rule on the latter three theories, holding only that Glacier, Boas, and Shalett were the *alter egos* of Maritime.

■ The concept of disregarding the corporate existence and imposing liability personally upon the real parties to a transaction is well established and is summarized in 19 C.J.S. *Corporations* §839, at 264 (1940): "Where the director or officer is the alter ego of the corporation, that is, where there is such unity of interest and ownership that the separateness of the individual and corporation has ceased to exist, and the facts are such that an adherence to the fiction of separate existence of the corporation would sanction a fraud or promote injustice, such director or officer will be held liable for obligations of the corporation." The concept has been variously announced, defined, explained, and applied in decisions of many Federal and State courts. It has likewise been accepted and applied by the courts of this State for many years. (See *People ex rel. Scott v. Pintozzi* (1971), 50 Ill. 2d 115, 128, 277 N.E.2d 844, and cases cited therein.) A corporation may be the *alter ego* of another corporation and where this occurs the distinct corporate entity will be disregarded and the two corporations will be treated as one. See *Dregne v. Five Cent Cab Co.* (1943), 381 Ill. 594, 603, 46 N.E.2d 386; *Wikelund Wholesale Co. v. Tile World Factory Tile Warehouse* (1st Dist. 1978), 57 Ill. App. 3d 269, 272, 372 N.E.2d 1022.

A summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1977, ch. 110, par. 57.) The pleadings, deposition, admissions, and affidavits on file show that Glacier and Maritime are engaged in a similar type of business. Maritime originally engaged in the business of vessel husbandry and later became exclusively the general agent for Mardina Lines, chartering and operating their ships, booking their cargoes, arranging for the loading and unloading of their vessels, collecting their freights and paying their bills. Glacier also does vessel husbandry and booking of cargoes on behalf of various steamship lines. Glacier has now become the exclusive agent of the Jan C. Uiterwyck Co. Both Maritime and Glacier occupy the same office space. In his sworn affidavit, Morrie Boas stated that he was the secretary and vice-president of Maritime. In their brief in response to Federal's petition for a turnover order and in their response to Federal's motion for summary judgment, defendants have stated that the shareholders, officers, and directors of Maritime were Boas, Shalett, and Alan Cameron. In his deposition, Boas testified that the principals of Glacier were he and Shalett. In his affidavit, he stated that the shareholders, officers, and directors of Glacier were he, Shalett, and William Boas. In their response to Federal's petition for a turnover order,

defendants alleged that Boas and Shalett were the officers, directors, and shareholders of Glacier Marine. Maritime maintained two bank accounts at the First National Bank of Chicago Heights. In his deposition, Boas testified that the authorized signators to these accounts were he, Shalett, and William Boas. In his affidavit, he stated that the authorized signators "included" he, Shalett, and Alan Cameron. Glacier also maintains its bank account at the First National Bank of Chicago Heights. In his deposition, Boas testified that he, Shalett, and William Boas are the authorized signators to this account. In his affidavit, he maintains that only he and Shalett are the authorized signators. All of the Maritime employees became employees of Glacier when it was formed. The agreement, in which the office furniture and supplies of Maritime were conveyed to Glacier, was signed by Shalett and Boas on behalf of both corporations.

Defendants' brief presents a summary of case law discussing the various bases on which the courts will ignore the corporate form. The bulk of this discussion deals with cases which state that one factor or another, *standing alone*, is insufficient to allow the corporate form to be ignored. Totally ignored by the defendants are the admissions made by Boas during the citation examination, which were in essence that Glacier was formed by Shalett and him so they could carry on the same business without being harassed by the creditors of its bankrupt principal Mardina. Defendants' approach, following those admissions and throughout the conduct of this litigation, has been to back away from these damaging admissions and attempt to persuade the trial court, and now this court, that Boas didn't make those statements. Defendants insist, without foundation, that attachment of Maritime's bank accounts by creditors of Mardina would be illegal, and that it is a reasonable and legal approach to evade these creditors by forming another corporation. In their brief, defendants present "facts" to "support" this theory, some of which are drawn from the stricken portions of the Boas affidavit, and others from the supplemental affidavits which defendants were not permitted to file. A number of the citations to the record are impossible to trace.

In their reply brief, defendants assert that the statements made by Boas in his deposition are misquoted by the plaintiff and are presented out of context. This is totally false. The statements are neither misquoted, nor read out of context. Boas was represented by counsel at the citation examination. If he had not meant to say what he did, he had the opportunity then to clear the air. He did not do so. He should be bound by the plain meaning of his words.

■■ ■ We conclude that the pleadings, the Boas deposition, and the affidavits on file establish that there are no genuine questions as to the existence of such a unity of interest and ownership among Maritime,

Glacier, Boas, and Shalett that their individual identities have ceased to exist, and that an adherence to the fiction of the separate corporate existence of Maritime would sanction a fraud against the creditors of Maritime and would promote injustice. Glacier, Boas, and Shalett are the *alter egos* of Maritime and, as such, they are liable for its obligations. (See *Holland v. Joy Candy Manufacturing Corp.* (1st Dist. 1957), 14 Ill. App. 2d 531, 145 N.E.2d 101.) What questions there are exist only because of conflicts between the Boas deposition and his sworn affidavit. Triable issues of fact are not created by these conflicts. The trial court correctly granted summary judgment for Federal.

### IV.

Subsequent to the oral argument of this cause, the court was notified by one of the parties that attempts were being undertaken to settle the case. We delayed the preparation of this opinion pending the outcome of the settlement negotiations. On June 30, 1978, defendants filed a motion to dismiss this appeal indicating that they were desirous of satisfying the underlying judgment. Defendants sought an order from this court dismissing the appeal and directing Trans America Insurance Company, the surety on defendants' appeal bond, to pay the amount of the judgment to Federal. On July 3, 1978, Federal filed its objections to this proposed "settlement," and a motion for appellate attorney's fees and costs and for trial costs under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 41), contending that defendants' interest in settling the case at such a late date was an admission of the frivolity of the appeal.

■■ In our opinion, the "settlement" proposed by defendants is not a settlement at all. Given the litigious nature of these defendants, it is likely only to spawn additional litigation. Defendants' motion to dismiss this appeal is therefore denied.

Federal's motion for attorney's fees is based on section 41 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 41) which provides:

> "Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court upon motion made within 30 days of the judgment or dismissal."

Federal contends that defendants' willingness to settle the case after oral argument is tantamount to an admission that the appeal is frivolous, without merit, and in bad faith, and that the defendants have remained stubbornly litigious, causing Federal additional and unnecessary expense.

The motion also sets forth two instances in which defendants allegedly made false statements and violated the rules and orders of this court.

In response, defendants maintain that Federal has no statutory right to receive attorney's fees and costs upon the motion to dismiss the appeal, that Federal's claim that defendants' desire to settle the suit constitutes an admission of the frivolity of the appeal is "error"; and that defendants were motivated to "settle" the suit by a letter from Federal's attorney to defendants' employer (Jan C. Uiterwyck Co.) suggesting a settlement. Lastly, defendants contend that Federal's motion for appellate attorney's fees is frivolous and requests the award of attorney's fees incurred to respond.

In *Manchester Insurance & Indemnity Co. v. Strom* (2d Dist. 1970), 122 Ill. App. 2d 183, 258 N.E.2d 150, the court allowed the recovery of attorney's fees and expenses incurred in defending a frivolous appeal. The court stated:

> "We believe that the bringing of this action was without any basis and in bad faith, and that the appeal is a needless extension of a baseless lawsuit. By this appeal, it appears that the plaintiff [appellant] has remained stubbornly litigious and has caused the defendants and third parties additional unnecessary expenses for which they are entitled to reimbursement under the provisions of section 41 of the Civil Practice Act." (122 Ill. App. 2d 183, 190.)

The court remanded the case to the trial court for a hearing to determine the amount of appellate attorney's fees and expenses recoverable.

■■ We note the singular lack of merit in the defense raised by defendants to Federal's petition for a turnover order and for further equitable relief. This appeal is therefore a needless extension of a baseless defense. Throughout the course of this appeal, and even through the proposed "settlement," defendants have remained stubbornly litigious, obfuscatory, and have failed to observe the rules and orders of this court. In our view, Federal is entitled to recover reasonable costs and attorney's fees incurred in defending this frivolous appeal. *Manchester*; see also Supplement to Historical and Practice Notes, Ill. Ann. Stat., ch. 110, par. 41, at 15 (Smith-Hurd Supp. 1978).

■■ The amount of attorney's fees and expenses recoverable should be determined at a full hearing. Such a determination should be made by the trial court upon petition and answer or other appropriate pleadings, and after the receipt of evidence on this issue. *Manchester*, 122 Ill. App. 2d 183, 190; see also *Schroeder v. Busenhart* (1st Dist. 1971), 133 Ill. App. 2d 180, 272 N.E.2d 750; compare *Glazer v. Country Mutual Insurance Co.* (1st Dist. 1971), 131 Ill. App. 2d 586, 268 N.E.2d 526, and *Roller v. Logan Landfill, Inc.* (4th Dist. 1974), 16 Ill. App. 3d 1046, 307 N.E.2d 424.

For the reasons stated, defendants' motion to supplement the record on appeal is granted; defendants' motion to dismiss this appeal is denied; the judgment of the circuit court of Cook County is affirmed; the motion of the plaintiff, Federal Insurance Company, for appellate attorney's fees and expenses is granted, and the cause is remanded for a determination of the amount of attorney's fees and costs recoverable; and defendants' motion for attorney's fees and expenses incurred in responding to plaintiff's similar motion is denied.

Affirmed and remanded.

STAMOS, P. J., and PERLIN, J., concur.