*In re* REHABILITATION OF CENTAUR INSURANCE COMPANY (Hartford Fire Insurance Company *et al.*, Petitioners-Appellees and Cross-Appellants, v. Stephen F. Selcke, Director of Insurance, State of Illinois, Respondent-Appellant and Cross-Appellee).

First District (4th Division)   No. 1—91—3757

Opinion filed November 5, 1992.

294

Peter G. Gallanis, Dale A. Coonrod, and J. Kevin Baldwin, all of Chicago, for appellant.

Butler, Rubin, Newcomer, Saltarelli, Boyd & Krasnow, of Chicago (James I. Rubin, Robert N. Hermes, Sue Payne, and Samuel W. Ach, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:
The Centaur Insurance Company (Centaur) is a wholly owned subsidiary of Borg-Warner Corporation. Centaur issued numerous rein-

surance policies to the Hartford Companies (Hartford). Centaur was subsequently declared insolvent and placed under the supervision of the circuit court of Cook County. The Illinois Director of Insurance was appointed the rehabilitator of Centaur.

In the rehabilitation proceeding, Hartford sought a declaration that the rehabilitator did not have standing to pursue Hartford's claims against Borg-Warner. The trial court ruled that the rehabilitator lacked standing to pursue some claims, but had standing to pursue others. The rehabilitator and Hartford each brings an interlocutory appeal from the trial court's order.

We affirm in part and reverse in part and remand.

BACKGROUND

A

The record contains the following pertinent facts. In 1974, Borg-Warner created Centaur to serve as its captive insurer. Borg-Warner also allowed Centaur to do insurance and reinsurance business with entities that were not affiliated with Borg-Warner.

As an insurer, Centaur issued its own insurance policies to outside entities. As a reinsurer, Centaur assumed portions of the insurance risk underwritten by outside insurance companies. In these reinsurance transactions, outside insurers paid Centaur a premium for Centaur's agreement to indemnify the insurers against part or all of the losses that the insurers sustained on their policies. In a reinsurance transaction, an insurer that buys reinsurance from a reinsurer is designated the reinsured, or ceding company, because the reinsured cedes part or all of its risk to the reinsurer. See 13A J. Appleman, Insurance Law & Practice §7681, at 480-81 (rev. vol. 1976).

Hartford was one such ceding company that bought reinsurance from Centaur. From 1981 through 1984, Hartford ceded some of its policies to Centaur. However, as early as 1984, Centaur had begun to default on obligations it owed to Hartford.

B

The Illinois Director of Insurance filed a complaint in the trial court seeking an order of rehabilitation pursuant to article XIII of the Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 799 *et seq.*). On September 4, 1987, the trial court entered an agreed order of rehabilitation. See Ill. Rev. Stat. 1987, ch. 73, par. 802(5).

The rehabilitation order provided as follows. Centaur was declared insolvent. The Director of Insurance was appointed as rehabili-

tator of Centaur. He was vested with title to all of Centaur's "property, contracts, and rights of action"; he was authorized to manage Centaur's property and business; and he was authorized to "sue and defend for the Company, or for the benefit of the Company policyholders, shareholders and creditors." The rehabilitator subsequently submitted a plan to rehabilitate Centaur, which the court approved on November 19, 1990. See Ill. Rev. Stat. 1987, ch. 73, par. 804(3).

In a separate order (Moratorium Order) entered that day, the trial court, *inter alia*, enjoined all lawsuits against Centaur's directors, officers, or stockholders. However, on January 27, 1988, the court modified the Moratorium Order and lifted the prohibition.

On the same day that the prohibition was lifted, Hartford brought an action against Borg-Warner in the United States District Court for the Northern District of Illinois. Hartford pled four theories of recovery: abuses of the corporate structure that justify piercing the corporate veil, fraud, reckless misrepresentation, and promissory estoppel.

The Federal district court dismissed Hartford's complaint without prejudice based on, *inter alia*, the Federal doctrine of abstention. The United States Court of Appeals for the Seventh Circuit affirmed. *Hartford Casualty Insurance Co. v. Borg-Warner Corp.* (7th Cir. 1990), 913 F.2d 419.

Following the dismissal of its Federal lawsuit, on October 29, 1990, Hartford brought a declaratory judgment action against Borg-Warner in the circuit court of Cook County. The complaint was nearly identical to the complaint filed in Federal court. In the declaratory judgment complaint, Hartford pled four claims. In count I, Hartford alleged that Borg-Warner abused Centaur's corporate structure to such an extent that Centaur was merely Borg-Warner's alter ego, which justified the piercing of Centaur's corporate veil. In count II, Hartford alleged that Borg-Warner fraudulently misrepresented Centaur's policyholders' surplus in publicly filed financial reports. Count III alleged that Borg-Warner recklessly misrepresented Centaur's financial condition in publicly filed financial reports. Count IV alleged that Borg-Warner was estopped from denying responsibility for Centaur's obligations. Elsewhere in the record, Hartford alleged that the total losses for which Centaur will be responsible was at least $31 million.

On May 8, 1991, the rehabilitator moved to intervene in Hartford's declaratory judgment action against Borg-Warner. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—408.) He asked the trial court to dismiss the lawsuit. The rehabilitator argued, *inter alia*, that only he, as the

statutory receiver of Centaur, was entitled to pursue Hartford's claims against Borg-Warner.

## C

On June 25, 1991, in the rehabilitation proceeding, Hartford moved for a declaration that the rehabilitator lacked standing to pursue Hartford's claims. Hartford alternatively sought the appointment of a creditor's committee to pursue estate claims against Borg-Warner. Hartford argued that the rehabilitator lacked standing for two reasons. First, Hartford's claims against Borg-Warner are not claims that Centaur could have maintained against its parent prior to being placed in rehabilitation and, therefore, are not vested in the rehabilitator. Second, the rehabilitator is estopped from asserting that Hartford's claims belong to the estate based on his three-year acquiescence to and support of suits against Borg-Warner, brought by Centaur's creditors, including Hartford. The trial court granted Hartford's motion to defer ruling on the rehabilitator's motion to intervene in Hartford's declaratory judgment action until after the court ruled on Hartford's motion for a declaration in the rehabilitation proceeding.

On October 17, 1991, the trial court issued a memorandum order, in which the court ruled as follows. The rehabilitator is not generally empowered to assert claims belonging to creditors, but rather, may assert only those causes of action that belonged to Centaur at the time it was placed into rehabilitation. Based on this ruling, the trial court concluded that the rehabilitator lacked standing to pursue Hartford's alter ego claim and estoppel claim. However, the trial court further concluded that the rehabilitator had standing to pursue Hartford's fraud claim and reckless misrepresentation claim.

Regarding the alter ego and estoppel claims, the trial court subsequently stayed Hartford's declaratory judgment action against Borg-Warner until an award was rendered in a pending arbitration between Hartford and Centaur. The rehabilitator and Hartford each brings an interlocutory appeal from the trial court's October 17, 1991, order. See 134 Ill. 2d Rules 303(a)(3), 304(b)(2), 307(a)(5).

OPINION

## I

The rehabilitator assigns error to the trial court's ruling that he was not generally empowered to assert creditors' claims against Borg-Warner. Rather, the rehabilitator argues that "[a]s the representative

of *both the company and its creditors,*" he "should have the unfettered right" to pursue claims against Borg-Warner on behalf of Centaur's policyholders and creditors. (Emphasis added.) As sources of this alleged authority, the rehabilitator cites the agreed order of rehabilitation and the subsequent revised plan of rehabilitation, and article XIII of the Insurance Code.

■ We cannot accept the rehabilitator's argument. Initially, we note that the trial court's rehabilitation order and subsequent revised rehabilitation plan are not sources of the rehabilitator's authority. Rather, article XIII of the Insurance Code establishes the position of rehabilitator, identifies the property over which a rehabilitator exercises authority, and outlines the manner in which that authority is exercised. (Ill. Rev. Stat. 1987, ch. 73, par. 799 *et seq.*) Since a rehabilitator derives his or her authority from the statute and cannot act against or beyond the statute, a court order does not confer on a rehabilitator any additional authority. 19A J. Appleman, Insurance Law & Practice §10682, at 121 (rev. vol. 1982).

■ We now turn to article XIII of the Insurance Code. By the statute's express language, a rehabilitator's authority does not extend beyond the authority over the "property, contracts and rights of action *of the company as of the date of the order directing rehabilitation or liquidation.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 73, par. 803; see 19A J. Appleman, Insurance Law & Practice §10682, at 121 (rev. vol. 1982).) If the legislature had intended a rehabilitator to exercise authority over *creditors'* rights of action, it could have easily so provided in the statute.

The statute is consistent with long-established common law principles. Our supreme court stated the following rule over a century ago:

> "We understand the rule to be, that where a receiver is appointed for the purpose of taking charge of the property and assets of a corporation, he is, for the purpose of determining the nature and extent of his title, regarded as representing only the corporate body itself, and not its creditors or shareholders ***. *** [F]or purposes of litigation, he takes only the rights of the corporation such as could be asserted in its own name, and that upon that basis, only, can he litigate for the benefit of either shareholders or creditors." *Republic Life Insurance Co. v. Swigert* (1890), 135 Ill. 150, 167, 25 N.E. 680, 685.

In *Republic Life Insurance*, our supreme court recognized that a receiver is generally regarded as a trustee for creditors and stockholders. However, the court explained that " 'this only proves that

they are the beneficiaries of the fund in his hands, without indicating the sources of his title or the extent of his powers.' " Thus, in a controversy between a receiver and a third party regarding a corporate estate, the receiver does not represent the rights that belong to individual creditors, which the corporation could not assert in its own name. 135 Ill. at 168, 25 N.E. at 685, quoting *Curtis v. Leavitt* (1857), 15 N.Y. 9, 44.

Courts in subsequent decisions have held that these basic principles remain the law of Illinois. (*E.g., People ex rel. Barrett v. Bank of Peoria* (1938), 295 Ill. App. 543, 549, 15 N.E.2d 333, 335-36; *Schacht v. Brown* (7th Cir. 1983), 711 F.2d 1343, 1346 n.3.) We do likewise.

■■ The rehabilitator in the case at bar is the statutory receiver of Centaur. Insurance Code section 191 vested him with "the title to all property, contracts and rights of action *of the company as of the date of the order directing rehabilitation or liquidation.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 73, par. 803.) Therefore, we uphold the trial court's ruling that the rehabilitator may assert only those causes of action that belonged to Centaur at the time it was placed into rehabilitation.

A

The rehabilitator continues his challenge to the trial court's October 17, 1991, order. He assigns error specifically to the trial court's ruling that he lacks standing to pursue Hartford's alter ego claim.

■■ A corporation is legal entity, which exists separate and distinct from its stockholders, officers, and directors, who generally are not liable for the corporation's obligations. (*Gallagher v. Reconco Builders, Inc.* (1980), 91 Ill. App. 3d 999, 1004, 415 N.E.2d 560, 563.) This is true even though the corporation is a close corporation, where the stock is held in a few hands and is not frequently traded. (*Gallagher,* 91 Ill. App. 3d at 1004, 415 N.E.2d at 563.) This is also true even though the corporation is a subsidiary corporation, where the stock is wholly owned by a parent corporation and where the parent and subsidiary have mutual dealings. *Holland v. Joy Candy Manufacturing Corp.* (1957), 14 Ill. App. 2d 531, 534, 145 N.E.2d 101, 103, quoting *Dregne v. Five Cent Cab Co.* (1943), 381 Ill. 594, 603, 46 N.E.2d 386, 391.

■■ However, a court will disregard a corporate entity and pierce the veil of limited liability where the corporation is merely the alter ego or business conduit of a governing or dominating personality (*Gallagher,* 91 Ill. App. 3d at 1004, 415 N.E.2d at 563), or "where the corporation is so organized and controlled, and its affairs so con-

ducted, as to make it a mere instrumentality of another corporation." (*Holland*, 14 Ill. App. 2d at 534, 145 N.E.2d at 103.) "A corporation may be the *alter ego* of another corporation and where this occurs the distinct corporate entity will be disregarded and the two corporations will be treated as one." (Emphasis in original.) *Federal Insurance Co. v. Maritime Shipping Agencies, Inc.* (1978), 64 Ill. App. 3d 19, 30, 380 N.E.2d 873, 880.

For the doctrine to apply, two requirements must be met. First, there must be such a unity of interest and ownership that the separate personalities of the corporation and the dominating individual or entity no longer exist. Second, the facts must be such that an adherence to the fiction of separate corporate existence would endorse a fraud or promote injustice. *Gallagher*, 91 Ill. App. 3d at 1004, 415 N.E.2d at 563-64.

■ The doctrine of "piercing the corporate veil" is an equitable remedy (*Tilley v. Shippee* (1958), 12 Ill. 2d 616, 623, 147 N.E.2d 347, 352; 1 W. Fletcher, Cyclopedia of Corporations §41.25 (1990)); it "is not itself a cause of action but rather is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract." (1 W. Fletcher, Cyclopedia of Corporations §41, at 603 (1990).) The doctrine of alter ego fastens liability on the individual or entity that uses a corporation merely as an instrumentality to conduct that person's or entity's personal business. "[S]uch liability arises from fraud or injustice perpetrated not on the corporation but on third persons dealing with the corporation. *The corporate form may be disregarded only where equity requires the action to assist a third party.*" (Emphasis added.) 1 W. Fletcher, Cyclopedia of Corporations §41.10, at 615 (1990); see *Sinquefield v. Sears Roebuck & Co.* (1991), 209 Ill. App. 3d 595, 598, 568 N.E.2d 325, 327.

These concepts have been explained and applied by Illinois courts in many decisions over the years. (*Federal Insurance*, 64 Ill. App. 3d at 30, 380 N.E.2d at 880.) Illinois courts will disregard the corporate identity of a subsidiary corporation and treat the subsidiary and parent corporations as one if the adherence to the fiction of separate corporate existence would endorse a fraud upon creditors. See, *e.g., Federal Insurance*, 64 Ill. App. 3d at 31-32, 380 N.E.2d at 881-82; *Holland*, 14 Ill. App. 2d at 535, 145 N.E.2d at 104.

■ Applying these principles to the case at bar, we agree with the trial court that the rehabilitator lacks standing to pursue Hartford's alter ego claim. The trial court correctly concluded that, under the alter ego doctrine, a subsidiary corporation cannot pierce its own corporate veil to reach a parent corporation. Rather, the equitable

remedy lies with third parties such as creditors. Thus, the trial court correctly reasoned that Hartford, and not Centaur, can seek to pierce Centaur's corporate veil under the doctrine. The trial court further reasoned that since the remedy is not available to Centaur, then it is likewise not available to the rehabilitator. We uphold the trial court's ruling.

## II

■ Hartford assigns error to the trial court's conclusion that the rehabilitator had standing to pursue Hartford's fraud claim and reckless misrepresentation claim. To state a cause of action for fraudulent misrepresentation, a plaintiff must prove (1) that the defendant made a statement, (2) of a material nature as opposed to opinion, (3) untrue, (4) known or believed by the person making it to be untrue, or made in culpable ignorance of its truth or falsity, (5) relied upon by the victim to his detriment, (6) made for the purpose of inducing reliance, and (7) such that the victim's reliance led to his injury. *Gordon v. Dolin* (1982), 105 Ill. App. 3d 319, 324, 434 N.E.2d 341, 345-46; accord *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286, 402 N.E.2d 599, 601.

Citing these elements, the trial court ruled that Hartford's fraud claim and reckless misrepresentation claim "are general claims which could be brought both by Centaur and its creditors." The trial court reasoned that other creditors in addition to Hartford, and perhaps Centaur itself, may also have relied on Centaur's erroneous financial reports prepared by Borg-Warner.

■ The trial court's analysis was incomplete. To state a cause of action for fraud, a plaintiff must show, in addition to the above-cited elements, that, under all of the circumstances, his reliance on the fraudulent misrepresentation was justified. In other words, the plaintiff must have had a right to rely on the misrepresentation. This question is answered by viewing the statements in light of all the facts of which plaintiff had actual knowledge as well as those of which she might have availed herself by exercise of ordinary prudence. *Soules*, 79 Ill. 2d at 286-87, 402 N.E.2d at 601; *Central States Joint Board v. Continental Assurance Co.* (1983), 117 Ill. App. 3d 600, 607, 453 N.E.2d 932, 936; *Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 141, 213 N.E.2d 89, 92-93.

■ Applying all of the controlling principles to the present case, we conclude that the rehabilitator lacks standing to pursue Hartford's fraud claim and reckless misrepresentation claim. It is true that other creditors in addition to Hartford, and Centaur itself, could also have

relied on the erroneous financial statements. However, the tort requires each of these parties to prove that its reliance was justified, based on the particular facts that each possessed or should have possessed. In other words, each party's claim is presumptively personal.

Of course, the rehabilitator can bring a fraudulent misrepresentation action in the name of *Centaur*. A receiver for an insurance corporation has the right to bring an action that is necessary to preserve the *corporation's* assets and to recover assets of which the *corporation* has been wrongfully deprived through fraud. In such an action, the receiver may be said to sue also on behalf of the stockholders and creditors, but only because they are the beneficiaries of the corporation's assets. *Cotten v. Republic National Bank* (Tex. Civ. App. 1965), 395 S.W.2d 930, 941; accord *Republic Life Insurance*, 135 Ill. at 168, 25 N.E. at 685.

However, the rehabilitator does not seek to bring the claims in the name of Centaur. Rather, he seeks to pursue these claims on behalf of *Hartford.* As the court in *Cotten* explained:

> "But some actions for fraud are by their nature personal to each creditor, or each stockholder, or each policyholder, and the receiver may not then maintain a suit in his representative capacity for their joint benefit. In such case each claimant and he alone may bring and maintain the suit himself, for the action is personal, separate and several, not joint, and extends no further than the individual loss of each particular creditor who sues. For example, one who proves that he relied on false representations as to the corporation's financial condition and was thereby induced to extend credit to the corporation, or to purchase stock in it, or to take out an insurance policy with it, must in his own name maintain a separate suit for his damages against the person who uttered the fraudulent representations. The aggrieved party and he alone may maintain the suit. *** The receiver has no right to bring or maintain such a suit."
> *Cotten*, 395 S.W.2d at 941 (and cases cited therein).

See 19A J. Appleman, Insurance Law & Practice §10681, at 118 n.6 (rev. vol. 1982).

The issue of whether Hartford justifiably relied on Centaur's erroneous financial reports prepared by Borg-Warner is personal to Hartford. Since Centaur cannot maintain a fraud claim and a reckless misrepresentation claim on behalf of Hartford, neither can the rehabilitator. We reverse the trial court's ruling that the rehabilitator had standing to pursue Hartford's fraud claim and reckless misrepresentation claim.

For the foregoing reasons, the order of the circuit court of Cook County is affirmed in part and reversed in part and the cause remanded to the trial court for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part and remanded.

JOHNSON and McMORROW, JJ., concur.